**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mohith Verghese, et al., | No. CV-22-01762-PHX-MTL |
| Plaintiffs, | Consolidated with:<br>No. CV-22-01764-PHX-MTL |
| v. | **ORDER** |
| ASM America Incorporated, | |
| Defendant. | |

Mohith Verghese and Carl White worked as high-level engineers at ASM America, Inc. ("ASM"). They left ASM to work for its competitor, Applied Materials, Inc. ("AMAT"). Soon thereafter, AMAT named Verghese and White as inventors on a patent application relating to solid source sublimation vessels. ASM suspects that the technology embodied in AMAT's application derives from its own innovations, which were known to Verghese and White while employed there.

The race to the courthouse commenced. ASM filed a state-law breach-of-contract action against Verghese and White in Arizona state court alleging that they stole ASM's proprietary technology. The state-law action was timely removed to this Court. *ASM America Inc. v. Verghese et al*., 2:22-cv-01764-MTL (the "ASM Action"). Verghese and White then filed a federal declaratory judgment action in this Court against ASM to establish themselves as the rightful inventors of the AMAT applied-for patent. *Verghese et al. v. ASM America Inc.*, 2:22-cv-01762-MTL (the "Verghese and White Action"). The cases are now consolidated, and the parties challenge federal jurisdiction in both cases.

1

I.      **PROCEDURAL POSTURE**

2          ASM initially filed its action in Arizona Superior Court on September 9, 2022.

3   (ASM Action, Doc. 1-3 at 8.) ASM advances a single state-law claim for relief based on

4   breach of contract.  (*Id.* ¶¶ 33-38.) ASM also alleges that, as the parties acknowledged in

5   their employment agreements, in the event of breach, monetary damages alone are an

6   inadequate remedy and that ASM "is entitled to injunctive relief." (*Id.* ¶¶ 14, 38.) ASM

7   therefore asks the Court to award damages and issue "[a]n order enjoining [Verghese and

8   White] from prosecuting any patents using information gained during or related to [their]

9   employment with ASM." (*Id.* ¶¶ (A)–(B).)

10          Verghese and White removed that action to this Court, asserting that federal

11   jurisdiction is proper because ASM's Complaint raises "substantial questions of federal

12   patent law." *See* 28 U.S.C. § 1338(a) (ASM Action, Doc. 1 at 1.)  Verghese and White then

13   filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Arizona

14   Revised Statutes § 12-751, arguing that ASM's claim is not ripe because the AMAT patent

15   application, U.S. Patent Application No. 17/093,518 (the "'518 Application") is pending,

16   among other things. (ASM Action, Doc. 10.)

17          On October 13, 2022, Verghese and White filed their own complaint with this Court

18   seeking (1) a declaratory judgment that they, along with a non-party, jointly invented the

19   subject matter presented and claimed in the '518 Application without using confidential

20   ASM information or deriving the invention from their prior work at ASM; and (2) a

21   declaratory judgment and an injunction barring ASM from using a court action to contest

22   inventorship or any interference with the examination of the '518 Application while it is

23   under examination. (Verghese and White Action, Doc. 1 ¶¶ 30, 36.)

24          ASM moved to remand (Verghese and White Action, Doc. 15) and to dismiss

25   Verghese and White's Complaint for lack of subject matter jurisdiction (Verghese and

26   White Action, Doc. 14).

27

28

## II.     MOTION TO REMAND THE ASM ACTION

### A.     Background Facts

ASM manufactures and sells semiconductor processing equipment. (ASM Action, Doc. 1-3 ¶ 6.)  Verghese and White worked there from February 2002 to December 2018, and 2004 to August 2019, respectively. (*Id.* ¶¶ 7–9.) As a condition of their employment, Verghese and White each "signed an Employee Intellectual Property Assignment & Confidentiality Agreement (the 'Agreements')" where they agreed to, among other things, certain terms relating to ownership of technological creations and the confidentiality of information they gained while working on products, processes, designs, test data, and customer and supplier lists as ASM employees. (*Id.* ¶¶ 10–12.) The Agreements specified that ASM would own any technological creations Verghese or White conceived, made, created, or developed while employed there. (*Id.* ¶ 11.) Verghese and White also agreed that they would not "disclose directly or indirectly to any person or entity, or use for [their] own benefit, any confidential information of [ASM]." (*Id.* ¶ 12.) "Confidential information," per the Agreements, consists of "all information developed by, obtained by, or disclosed to [Verghese and White] by [ASM] that related to [ASM's business]," which includes "products, processes, designs, test data, customer and supplier lists, trade secrets and the results of [Verghese and White's] work, except such information as is publicly disclosed by [ASM] or is or becomes publicly known through no wrongful act by [Verghese and White]." (*Id.*)

ASM alleges that Verghese and White did, indeed, "develop[] certain innovations related to solid source sublimination vessels," which were incorporated into in ASM's U.S. Patent Application No. 16/539,911 filed with the U.S. Patent and Trademark Office ("PTO") in August 2019. (*Id.* ¶ 18.) As of April 25, 2023, ASM's U.S. Patent Application No. 16/539,911, is now issued as Patent No. US 11,634,812 (the "'812 Patent"). (Verghese and White Action, Doc. 27.)

ASM alleges that Verghese and White breached the Agreements when they left ASM and began working for AMAT, one of its primary competitors, where they "used

1    information deriving from their previous work at ASM pursuing technical solutions for
2    AMAT." (ASM Action, Doc. 1-3 ¶¶ 10–12, 16–17, 25.) ASM draws this conclusion from
3    a few relevant data points, including Verghese and White being named inventors on the
4    '518 Application, which AMAT filed on November 9, 2020, after Verghese and White
5    began working there. (*Id.* ¶¶ 25–26.) ASM further alleges that the '518 Application shares
6    key similarities with its own '812 Patent and that White's ASM lab notebooks reveal that
7    he knew about certain confidential ASM innovations that are now embodied in the '518
8    Application. (*Id.* ¶¶ 28–32.)

9         Verghese and White removed the ASM Action to this Court, relying solely on 28
10   U.S.C. § 1338(a). Verghese and White allege that ASM's breach of contract claim arises
11   "under the United States Patent Act, 35 U.S.C. § 1 *et seq.*, because they raise substantial
12   questions of federal patent law." (ASM Action, Doc. 1 ¶ 10.)

13        **B.**     **Standard of Review**

14        Federal courts are courts of limited jurisdiction. A case originally filed in state court
15   may be removed to a federal court only if the federal court would have had original
16   jurisdiction over the action. 28 U.S.C. § 1441(a). The removing parties, here, Verghese and
17   White, bear the burden of establishing that removal is proper. *Emrich v. Touche Ross &*
18   *Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990). The removal statutes are strictly construed such
19   that any doubts are resolved in favor of remand. *Id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d
20   564, 566 (9th Cir. 1992). Whenever a federal court determines that it lacks subject matter
21   jurisdiction in a removed case, it must remand the matter to state court. 28 U.S.C. § 1447.

22        **C.**     **Discussion**

23        Verghese and White argue that this Court has subject matter jurisdiction under 28
24   U.S.C. § 1338, which grants federal courts exclusive jurisdiction over "any civil action
25   arising under an Act of Congress relating to patents." 28 U.S.C. § 1338(a). The Supreme
26   Court has held that jurisdiction under § 1338(a) is determined by a two-part test, analyzing
27   whether:

28             [T]he well-pleaded complaint establishes either that federal

> patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988).

To establish jurisdiction under Section 1338(a), Verghese and White need only satisfy one prong of the two-part test.

### 1.    *Christianson* – **Part One**

The first part of the *Christianson* test directs the Court to analyze, looking only to the complaint, whether patent law is a necessary element of ASM's claim. Whether the claim arises under federal patent law "'must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Id.* at 809 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983)). ASM's Complaint alleges that the Agreements require that Verghese and White:

> [P]romptly disclose to [ASM] and [] assign and transfer to [ASM], without further compensation, all [their] right, title, and interest in all designs, works of authorship, copyrightable creations, mask works, trademarks, discoveries, innovations, formulae, processes, manufacturing techniques, trade secrets, inventions, improvements, ideas, and other contributions (collectively, 'Creations') whether or not patented or patentable, copyrighted or copyrightable or trademarked or trademarkable, which are conceived, made, developed, created or acquired by [them], including all rights to obtain, register, perfect and enforce these interests that relate to [their] work during the period of [their] employment with [ASM], whether or not during normal working hours, or that are aided by the use of [ASM] experience, time, material, equipment, or facilities.

(ASM Action, Doc. 1-3 ¶¶ 10, 11.)

Verghese and White also agreed that they would not "disclose directly or indirectly to any person or entity, or use for [their] own benefit, any confidential information of

[ASM]." (*Id.* ¶ 12.) "Confidential information," according the Agreements, consists of "all information developed by, obtained by, or disclosed to [Verghese and White] by [ASM] that related to [ASM's] business," which includes "without limitation, products, processes, designs, test data, customer and supplier lists, trade secrets and the results of [Verghese and White's] work, except such information as is publicly disclosed by [ASM] or is or becomes publicly known through no wrongful act by [Verghese and White]." (*Id.*)

Here, ASM alleges that Verghese and White breached the Agreements by "using information deriving from their previous work at ASM in pursuing technical solutions for AMAT," not assigning "to ASM all right and title in the patent applications they have prosecuted using information and knowledge gained during and because of their employment with ASM", and "using ASM confidential information to prosecute patents for the benefit of themselves and AMAT." (*Id.* ¶¶ 26, 28–30, 35–36.)

The Federal Circuit, which has exclusive responsibility for appellate review of patent cases, has consistently held that the mere presence of some patent law issue, or even the fact that patent ownership lies at the center of the controversy, cannot of itself create the substantial question of federal patent law giving rise to § 1338(a) jurisdiction. For example, in *American Telephone and Telegraph Co. v. Integrated Network Corp.*, the Federal Circuit held that claims of misappropriation of proprietary information, breach of fiduciary duty, and breach of contract did not present a substantial question of patent law where a company sued its former employees and their new employer after they allegedly divulged proprietary information that was later included in a patent. 972 F.2d 1321, 1324–25 (Fed. Cir. 1992). Similarly, in *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, the Federal Circuit found that merely mentioning a patent where the underlying allegations involve a former employee divulging confidential information by acts that included preparing and filing the patent application did not create a substantial issue of patent law. 239 F.3d 1277, 1280 (Fed. Cir. 2001). The court explained that the "patent may be evidence in support of [plaintiff's] allegations, but the mere presence of the patent does not create a substantial issue of patent law." *Id.*

Verghese and White argue that, taken together, ASM's allegations effectively assert patent-based claims, including issues of novelty, non-obviousness, and derivation proceedings. (Verghese and White Action, Doc. 21 at 13–14 (citing 35 U.S.C. §§ 102, 103, and 135, respectively).) ASM's Complaint, however, does not assert any of these claims, and federal patent law does not create ASM's breach-of-contract claim. While ASM could have brought these patent claims, it instead limited its Complaint to a single state-law breach-of-contract claim. "A plaintiff is the master of his complaint and responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). ASM's Complaint will stand or fall on whether it can prove its state-law breach-of-contract claim.

Like *American Telephone and Telegraph Co.* and *Uroplasty, Inc.*, the Court finds that ASM's well-pleaded Complaint alleges a state-law breach-of-contract claim that does not arise from a substantial issue of patent law. (ASM Action, Doc. 1-3.) Therefore, the Court finds that ASM's Complaint does not meet the first *Christianson* prong because federal patent law does not create ASM's cause of action for breach of contract.

### 2.   *Christianson* – Part Two

Turning to the second prong of the *Christianson* test, whether the "right to relief necessarily depends on resolution of a substantial question of federal patent law," Verghese and White argue that this Court has jurisdiction because "[f]ederal courts have exercised jurisdiction over such requests to enjoin PTO proceedings." (Verghese and White Action, Doc. 21 at 11.)  Verghese and White rely on three cases to support this proposition:  *Max-Planck-Gesellschaft Zur Förderung Der Wissenschaften E.V. v. Whitehead Institute for Biomedical Research*, 650 F. Supp. 2d 114 (D. Mass. 2009); *Freeman v. Minnesota Mining and Manufacturing Co.*, 661 F. Supp. 886 (D. Del. 1987); and a case from this Court, *BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, No. CV-19-05216-PHX-MTL, 2021 WL 1751134 (D. Ariz. May 4, 2021). (*Id.*) ASM, however, argues it "only seeks to enjoin [Verghese and White] from prosecuting patent applications they do not own" and "is not seeking to enjoin the PTO from doing anything." (Verghese and White Action, Doc.

23 at 7.)

Verghese and White correctly observe that federal courts have exercised jurisdiction where a party seeks relief involving the PTO. But these authorities involve a plaintiff seeking relief specifically involving PTO action, or the operative complaint involved a federal question where jurisdiction was never disputed. For example, in *Max-Planck-Gesellschaft Zur Förderung Der Wissenschaften E.V*, the plaintiffs sought a preliminary injunction to enjoin defendants "from paying the issuance fee in the event that the [PTO] issues a notice of allowance." 650 F. Supp. 2d at 116. In *Freeman*, the issue before the court was whether the defendant "should be allowed to petition the PTO for reexamination when the case is close to trial." 661 F. Supp. at 887. And the claims before this Court in *BBK Tobacco & Foods LLP*, included "claims for trademark infringement, false designation of origin and representation, and anti-cybersquatting consumer protection under federal law, and trademark infringement and unfair competition claims under Arizona law." 2021 WL 1751134, at *1. The Court finds these cases unpersuasive here, because, unlike ASM's Action, those actions specifically requested relief concerning the PTO or expressly alleged a federal question.

Verghese and White also argue that jurisdiction exists because ASM seeks to deprive them "of their right to obtain a patent for their inventions through prosecution before the PTO." (Verghese and White Action, Doc. 21 at 11.)  This argument, however, is more akin to a counterclaim, which cannot serve as the vehicle for removal. *See Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 822 (9th Cir. 1985) ("We have held that removability cannot be created by defendant pleading a counterclaim presenting a federal question . . . .") (internal quotation and citation omitted)).

By contrast, Verghese and White do not identify a case where a court has expressly held that a complaint, like ASM's, which alleges only a state law claim seeking damages and a broader injunction against any type of patent prosecution—as agreed upon between the parties—appropriately falls within a federal court's jurisdiction under 28 U.S.C. § 1338. In fact, the opposite is true, as other federal courts reviewing similar claims

have found remand appropriate.

For example, in *Altavion, Inc. v Konica-Minolta Systems Laboratory, Inc.*, the court, reviewing similar claims and requested relief, granted the plaintiff's motion to remand. 2008 WL 2020593, at *8 (N.D. Cal. May 8, 2008). There, the parties entered into a confidential and mutual non-disclosure agreement. *Id.* at *1. The parties also signed a memorandum of understanding agreeing that the digital stamping technology was plaintiff's intellectual property and agreed to "negotiate a license and/or revenue sharing agreement in the event that [defendant] developed, marketed, and sold a product utilizing [plaintiff's] digital stamping technology." *Id.* Without notifying the plaintiff or obtaining its consent, the defendant filed patent applications which disclosed plaintiff's intellectual property. *Id.* Plaintiff then filed an action in California state court, alleging state law claims for breach of contract, misappropriation of trade secrets, conversion, unjust enrichment, unfair business practices, and fraud. *Id.* at *2. Plaintiff also sought the following injunctive relief: "(1) [r]estraining [defendant] from seeking to exploit any rights, either directly or through third parties, with respect to the [ten Patent Applications filed by defendant]"; and "(2) [o]rdering [defendant] to recognize [plaintiff's] ownership of all patent applications, including the [ten filed by defendant], comprising [plaintiff's] intellectual property." *Id.* at *7. Defendant removed the action under 28 U.S.C. § 1338, alleging that plaintiff's case turned on substantial questions of patent law—namely, inventorship. *Id.* The court did not find defendant's arguments persuasive, because "each of plaintiff's claims [could] be adjudicated and appropriate monetary and injunctive relief [could] be awarded without resolution of 'inventorship' in the technical sense used in patent law." *Id.* The court found that neither *Christianson* factor was satisfied and granted plaintiff's motion to remand. *Id.* at *8.

Similarly, the Federal Circuit, in *Intellisoft, Limited v. Acer America Corporation*, found that the asserted state-law trade secret claims and damages requested did not necessarily depend "on resolution of a substantial question of federal patent law." 955 F.3d 927, 933 (Fed. Cir. 2020) (internal citation and quotation omitted). There, the court

1  explained the plaintiff "did not need to prove inventorship under federal law to establish

2  ownership." *Id.* at 932.The court also found that the damages requested by plaintiff could

3  be calculated by presuming the defendant's products incorporated the trade secrets without

4  any patent infringement analysis. *Id.* at 932–33. With this reasoning, the court reversed and

5  remanded the district court's order denying plaintiff's motion to remand. *Id.* at 936.

6         Like the courts in *Altavion, Inc.* and *Intellisoft, Limited*, this Court finds that the

7  relief ASM requests—to enjoin Verghese and White from prosecuting patent applications

8  they do not own and an award of damages—does not necessarily depend on "resolution of

9  a substantial question of federal patent law." *Christianson*, 486 U.S. at 809. Rather, the

10  issues and relief that ASM raises relate to ownership and are governed by state law—not

11  federal patent law. *See Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed.

12  Cir. 2008) ("Our case law is clear that state law, not federal law, typically governs patent

13  ownership."). Verghese and White have not met their burden under 28 U.S.C. § 1441 that

14  this Court has jurisdiction under 28 U.S.C. § 1338(a) and *Christianson*. The Court will

15  grant ASM's Motion to Remand (Verghese and White Action, Doc. 15).

16  **III.    MOTION TO DISMISS THE VERGHESE AND WHITE ACTION**

17         **A.    Background Facts**

18         The Verghese and White Complaint alleges that AMAT hired Verghese in late

19  January 2019 and White in January 2020. (Verghese and White Action, Doc. 1 ¶¶ 8–9.)

20  While at AMAT, Verghese and White, along with another individual, undertook a project

21  relating to "conventional solid chemical delivery systems by conceiving of a refillable solid

22  precursor sublimation vessel with a lid, a refill port, and a solid precursor refill cartridge

23  that can be removed." (*Id.* ¶ 12.)  Verghese and White allege that their "novel refillable

24  solid chemical delivery system tool design and configuration naturally builds upon

25  concepts that were widely known in the field." (*Id.* ¶ 13.) Verghese and White also allege

26  that they, along with another individual, presented this "novel refillable solid chemical

27  delivery system (the 'Invention') to [AMAT] in an invention disclosure form on July 31,

28

2020."[1] (*Id.* ¶ 14.)  They further allege that they sought to protect the Invention by filing the AMAT '518 Application. (*Id.* ¶ 15.) Verghese and White allege that they "invented the refillable vessel" at AMAT, that they "did not invent the refillable vessel at ASM" and that "ASM has no claim to Verghese and/or White's inventions post-employment." (*Id.* ¶ 16.)

Verghese and White assert that they did not derive the Invention from their work at ASM, and that ASM "seeks to deprive [them] of the ability to seek patent protection for the Invention that they developed at [AMAT] . . . ." (*Id.* ¶ 17.) As such, Verghese and White seek a declaratory judgment that they and another person, who is not involved in this litigation, "jointly invented the subject matter presented and claimed in the [AMAT] '518 Application without using confidential ASM information or deriving the invention from their prior work at ASM." (*Id.* ¶ 30.) Verghese and White also request a declaratory judgment and an injunction as follows:

> [B]arring ASM from using a court action while the [AMAT] '518 Application is under examination to: (i) contest that Verghese and White, together with [another non-party individual], invented the novel refillable sublimation vessel improvement presented in the [AMAT] '518 Application during the course of their work for [AMAT] '518 without derivation from work by Verghese and White, or others at ASM and without relying on confidential ASM information; or (ii) interfere with Verghese and White's participation in the examination of the [AMAT] '518 Application.

(*Id.* ¶ 36.)

**B.    Standard of Review**

The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

---

[1] The Court understands this to mean that Verghese and White have created a novel, refillable tool, which contains a solid. This tool, along with other configurations, uses a chemical reaction to transform this solid directly into a gas. Through this process, an ultra-thin layer of conductive material is deposited onto a semiconductor wafer. (Verghese and White Action, Doc. 1 ¶¶ 10, 12-14.)

Before entertaining a declaratory judgment, this Court must examine "whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). If no such case or controversy exists, then the case is not ripe for review and the court lacks subject matter jurisdiction. *Id.* "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991). "Article III requires that there be a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation and citation omitted).

Verghese and White carry the burden to prove the existence of an actual controversy such that subject matter jurisdiction exists. *Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1993).

### C.    Discussion

ASM moves to dismiss Verghese and White's Complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., for three reasons. First, ASM contends that this Court lacks subject matter jurisdiction because in *its* state court action, there is no question of inventorship, "and no live controversy under the federal patent laws." (Verghese and White Action, Doc. 14 at 12) (emphasis added).) Second, ASM argues that the Federal Circuit has routinely held that contract claims concerning ownership of patent applications or issued patents do not arise under patent laws. (*Id.* at 14-17.) Finally, ASM argues that this Court lacks jurisdiction over the inventorship dispute while the '518 Application is pending because the dispute is speculative and not ripe for review. (*Id.* at 12-14.)

Verghese and White respond that this Court does have subject matter jurisdiction over their Complaint because they seek declaratory judgment of a patent inventorship issue, and they have "protectable reputational interests" with respect to their inventorship. (Verghese and White Action, Doc. 20 at 9, 12.) Verghese and White also argue that the cases ASM cites in support of dismissal dealt with failure to state a claim rather than lack of subject matter jurisdiction. (*Id.* at 10.) This distinction, Verghese and White argue,

means that this Court should deny ASM's Motion. (*Id.* at 11.) Verghese and White further argue that should this Court find ASM's argument about ripeness persuasive, then it should also find ASM's claim in the state-court action to be similarly unripe because it involves the pending '518 Application as well. (*Id.* at 13.)

Verghese and White seek two declaratory judgments and an injunction. First, they ask this Court to declare them the inventors of the '518 Application without using confidential ASM information. (Verghese and White Action, Doc. 1 ¶ 30.) Next, they ask this Court to declare and enjoin ASM from using a court action to contest inventorship or interfere with Verghese and White's participation in the examination of the '518 Application. (*Id.* ¶ 36.)

The questions before this Court, then, are: first, whether declaring Verghese and White as the inventors of the '518 Application, which is currently under review by the PTO, is "of sufficient immediacy and reality" such that it is ripe for review. Second, whether barring ASM from using a court action or interfering with inventorship issues regarding the pending '518 Application, is "of sufficient immediacy and reality" such that it is ripe for review.

The Court holds that neither issue is ripe because the PTO is currently reviewing the '518 Application and the inventorship issues concerning that application are speculative. (*Id.* ¶ 34.) If Verghese, White, or AMAT "abandon their application or if the PTO [grants or] denies it, the inventorship issues at stake in this case may become moot." *Concrete Washout Sys., Inc.*, 2005 WL 1683930, at *4 (E.D. Cal. July 12, 2005). Verghese and White suffer only delay from this Court's "decision to let the PTO patent application review process run its natural course, whereas, reaching the inventorship issues now would be a waste of judicial resources." *Id.* "Until a patent is issued, the Court's involvement would be premature and would encroach on the administrative function of the Commissioner." *Display Rsch. Laboratories Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1174 (N.D. Cal. 2001).

At the heart of Verghese and White's Complaint are inventorship disputes arising

under 35 U.S.C. § 116. (Verghese and White Action, Doc. 1 ¶¶ 30, 35–36.) Section 116 provides that disputes of inventorship as to pending patent applications are within the exclusive purview of the PTO. 35 U.S.C. § 116. Courts have declined to exercise jurisdiction over inventorship disputes under 35 U.S.C. § 116 while a patent application is pending because such claims are speculative and turn on future events before the PTO. For example, in *Sagoma Plastics, Inc. v. Gelardi*, the court granted defendant's motion to dismiss where plaintiff raised claims regarding inventorship prior to the issuance of a patent by the PTO. 366 F. Supp. 2d 185, 186 (D. Me. 2005). The court explained that "the courts may not interfere with the patent process until after the PTO has rendered a final decision on the precise nature of the patent, if it chooses to issue a patent at all." *Id*. at 188. "Such a scheme ensures that potentially long and costly litigation over the question of inventorship will not be mooted by subsequent actions of the PTO." *Id.* Similarly, in *Simonton Building Products, Inc. v. Johnson*, the court declined to exercise jurisdiction for prudential ripeness reasons where plaintiffs sought a declaration that certain pending applications did not "incorporate[] any claims" from other issued patents. 553 F. Supp. 2d 642, 652 (N.D. W. Va. 2008). There, the court reasoned that "there simply is too much uncertainty about the ruling of the PTO regarding the . . . patent applications that could undermine or moot any ruling regarding whether those applications are enhancements that incorporate or improve upon the claims in the [issued] patents." *Id.*

In another case, *Concrete Washout Systems, Inc. v. Minegar Environmental Systems, Inc*., the defendant moved for summary judgment on plaintiff's declaratory judgment claims regarding inventorship in a patent application. 2005 WL 1683930, at *1. The court explained that even where it has subject matter jurisdiction to grant declaratory relief regarding inventorship issues under 28 U.S.C. § 1338(a), "it is well settled that the court has discretion to decline to exercise that jurisdiction." *Id.* at *4. The court then declined to exercise its jurisdiction over the inventorship issue "[b]ecause the PTO has not yet had the opportunity to reach the issues of inventorship disputed in this case." *Id.* The court reasoned that the inventorship issues are speculative and may become moot, and that

the aggrieved party may bring claims under 35 U.S.C. § 256 once the PTO issues a patent. *Id.*

Verghese and White argue that several of the cases that ASM relies on—namely *Sagoma* and *Concrete Washout*—and another case, *HIF Bio, Inc.*—dismissed the inventorship disputes because there was no private cause of action, rather than for lack of subject matter jurisdiction. (Verghese and White Action, Doc. 20 at 10.) Verghese and White argue that those cases found jurisdiction under 28 U.S.C. § 1338(a) and that this Court should therefore deny ASM's Motion. (*Id.* at 9–11.)

This argument fails for several reasons. First, the courts in *Sagoma*, *Concrete Washout*, and *HIF Bio, Inc.*, evaluated *statutory* subject matter jurisdiction under 28 U.S.C. § 1338(a)—which this Court agrees exists as to the Verghese and White Complaint. *See Sagoma Plastics, Inc.*, 366 F.Supp.2d at 190 (explaining that a cause of action under § 116 invokes § 1338(a) jurisdiction); *HIF Bio, Inc.* v. *Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010), *as amended on reh'g in part* (June 14, 2010) ("Because inventorship is a unique question of patent law, the cause of action arises under § 1338(a)."); *Concrete Washout Sys., Inc.*, 2005 WL 1683930, at *3 ("Several district courts, whose reasoning the court finds persuasive, have determined that federal courts have subject matter jurisdiction to resolve inventorship issues under 28 U.S.C. § 1338(a)."). Those cases, however, did not definitively discuss the issue presented before this Court by ASM—whether there is subject matter jurisdiction pursuant to Article III due to an actual case or controversy. "[S]tatutory standing is not indicative of Article III jurisdictional standing." *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 332 (5th Cir. 2014).

True, all three courts in *Sagoma*, *Concrete Washout*, and *HIF Bio, Inc.*, dismissed the inventorship claims on the merits because no private right of action exists under § 116. *See Sagoma Plastics, Inc.*, 366 F. Supp. 2d at 190; *Concrete Washout Sys., Inc.*, 2005 WL 1683930, at *1; *HIF Bio, Inc.*, 600 F.3d at 1354. But their analysis applies with equal force to the question of ripeness and subject matter jurisdiction. All three decisions explain that

the inventorship claims under § 116 are speculative and unripe because a patent application was pending before the PTO. *Sagoma Plastics, Inc.*, 366 F. Supp. 2d at 188; *Concrete Washout Sys., Inc.*, 2005 WL 1683930, at *4; *HIF Bio, Inc*., 600 F.3d at 1353. Because the ripeness standard under § 116 is essentially the same as that under Article III, it follows the facts presented in those cases would not present a case or controversy under Article III, either. *See Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.") (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).

Verghese and White also contend that they have "protectable reputational interests" with respect to their inventorship in the '518 Application and that those interests are "sufficient to confer standing over inventorship issues arising under federal law." (Verghese and White Action, Doc. 20 at 12.) They rely on *Shukh v. Seagate Tech., LLC*, and *Chou v. University of Chicago*, to support this proposition. 803 F.3d 659, 663 (Fed. Cir. 2015); 254 F.3d 1347, 1359 (Fed. Cir. 2001). In both those cases, however, the plaintiffs brought claims for correction of inventorship under 35 U.S.C. § 256, which governs issued patents—not pending applications. *Shukh*, 803 F.3d at 661; *Chou*, 254 F.3d at 1354. Verghese and White do not bring their declaratory judgment action under 35 U.S.C. § 256 to correct inventorship issues of an existing patent. They instead bring their declaratory judgment action under 35 U.S.C. § 116 regarding a patent application that remains under review. (Verghese and White Action, Doc. 1 ¶¶ 30, 34–36.) "On its face, § 116 authorizes only the Commissioner of Patents to make corrections on patent applications." *Display Rsch. Laboratories, Inc.*, 133 F. Supp. 2d at 1173. Whether a party brings an inventorship issue under § 116 or § 256 is important because Congress intended for the courts to adjudicate inventorship issues under 35 U.S.C. § 256, not § 116. *See Sagoma Plastics, Inc.*, 366 F. Supp. 2d at 188. "[T]his clear delegation of power to the courts in § 256 casts serious doubt upon the courts' power to adjudicate inventorship under § 116." *Id.*

1    Given these judicial determinations that the PTO should adjudicate patent
2    applications before judicial review is available, this Court finds that there is no actual case
3    or controversy, and thus no subject matter jurisdiction. The Court will grant ASM's
4    Motion.[2]

5    With respect to Verghese and White's injunctive relief, it is simply a form of relief
6    and not a freestanding cause of action. "Where a district court has jurisdiction of a cause it
7    may, under some circumstances, grant an injunction, preliminary injunction or temporary
8    restraining order," and "where there is no underlying cause of action over which the district
9    court has primary jurisdiction, it may not entertain an application for an injunction." *Sires*
10   *v. State of Wash.*, 314 F.2d 883, 884 (9th Cir. 1963). Because this Court lacks jurisdiction
11   over the Verghese and White Action, it may not entertain their request for injunctive relief.

12   . . .
13   . . .
14   . . .
15   . . .
16   . . .
17   . . .
18   . . .
19   . . .
20   . . .
21   . . .

22
_____

23   [2] Although this Court finds ASM's ripeness challenge meritorious, it cannot extend such a
24   holding over the ASM Action, despite Verghese and White's request. (Verghese and White
     Action, Doc. 20 at 12–13.) The Court first had to determine whether removal of the ASM
25   Action was proper before addressing Verghese and White's motion to dismiss. Because the
     Court found that removal of the ASM Action was improper under *Christianson*, and
26   Verghese and White had not met their burden under 28 U.S.C. § 1441, the Court was
27   required to remand back to Arizona state court. *See* Section II.C., *supra*. This precludes the
     Court from reviewing Verghese and White's motion to dismiss the ASM Action—which
28   includes their ripeness challenge. (ASM Action, Doc. 10.)

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** granting ASM's Motion to Remand to State Court (Doc. 15).

**IT IS FURTHER ORDERED** that the Clerk shall remand *ASM America Incorporated v. Verghese et al.*, 2:22-cv-01764-MTL to the Arizona Superior Court in Maricopa County and Verghese and White's Motion to Dismiss (Doc. 10) shall remain pending.

**IT IS FURTHER ORDERED** granting ASM's Motion to Dismiss for Lack of Jurisdiction (Doc. 14) and Verghese and White's Complaint in *Verghese et al. v. ASM America Incorporated*, 2:22-cv-01762-MTL is dismissed. The Clerk of Court is directed to enter judgment accordingly and shall terminate this case.

Dated this 18th day of July, 2023.

Michael T. Liburdi
United States District Judge